UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SIDNEI SILVA,<br><br>        Plaintiff,<br><br>v.<br><br>COBB COUNTY and CLINTON MONAHAN, in his individual and official capacities,<br><br>        Defendants. | Civil Action No. _____ |

## **COMPLAINT**

Sidnei Silva files this Complaint against Cobb County and Officer Clinton Monahan, in his individual and official capacities, respectfully showing the Court as follows:

## **INTRODUCTION**

1.    In this 42 U.S.C. § 1983 case, Officer Monahan illegally arrested Silva as is customary—indeed "routine[]"—in Cobb County when citizens exercise their First Amendment rights. While Silva was recording police conduct on public property with his cell phone, Officer Monahan slammed him to the pavement, took the phone, and then deleted the video. Silva was arrested and jailed. He brings this action to recover for the deprivation of his civil rights and his injuries.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Sidnei Silva is an adult citizen of the United States. By filing this Complaint, he avails himself of this Court's jurisdiction and venue.

3.     Defendant Cobb County (the "County") is a political subdivision of the State of Georgia that can sue and be sued, residing within this Division of the Northern District of Georgia. The Cobb County Board of Commissioners is the County's governing authority. The County may waive service. If it refuses to do so, the County may be served with process through the Board's chairman, Tim Lee, at 100 Cherokee Street, Marietta, Georgia 30090, or wherever else he may be found and served by law. The Court has personal jurisdiction over the County.

4.     Defendant Clinton Monahan is an officer employed by the Cobb County Police Department (the "County Police"). His actions here were ministerial, not discretionary, and he was acting in the course and scope of his employment. In the alternative, if his actions were discretionary, then they were done with willfulness, malice, and corruption and with the intent to cause injury. He resides within this Division of the Northern District of Georgia. Officer Monahan may waive service. If he refuses to do so, he may be served with process at 2 Mill Pointe Trail, Dallas, Georgia

30157, or wherever else he may be found and served by law. The Court has personal jurisdiction over Officer Monahan.

5.     Silva provided the County and Officer Monahan with proper *ante litem* notice under O.C.G.A. § 36-11-1. He has satisfied all prerequisites for his claims here.

6.     This Court has subject-matter jurisdiction under 28 U.S.C §§ 1331 and 1343(a)(3)–(4) because this case arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. At all relevant times, the County and Officer Monahan acted under color of the statutes, ordinances, regulations, customs, and usages of the County and of the State of Georgia. The Court has supplemental jurisdiction over Silva's state-law claims under 28 U.S.C. § 1367.

7.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims here occurred in Cobb County, Georgia, which is within the Northern District of Georgia. Venue is proper in this Division under Local Rule 3.1B(3) because the cause of action arose here.

## FACTUAL BACKGROUND

### The County's Pattern and
### Practice of Violating Civil Rights

8.    The County has a persistent and wide-spread pattern and a permanent and well-settled practice of violating civil rights.

9.    Upon information and belief, the County has a custom of arresting citizens exercising their First Amendment rights and charging them with disorderly conduct, obstruction, or both. For example, when Amy Barnes shouted "F--k the police!" to County Police officers, they arrested her and had her jailed. *See generally Barnes v. Cobb Cnty.*, No. 1:14-cv-00948-TWT (filed March 31, 2014). An anonymous spokesman for the County Police told a reporter that the they "routinely" charge people with disorderly conduct for cursing in public. *Id.* ¶ 41. That custom violates the First Amendment.

10.   What is more, the County tacitly authorizes repeated constitutional violations or displays of deliberate indifference toward police misconduct, making its failure to correct constitutionally offensive actions the County's custom or policy. For instance, after a County Police officer harassed and intimidated County Commissioner Lisa Cupid, she wrote a memorandum to the County noting that police misconduct is "protocol and

prevalent." The County Public Safety Director confirmed that the officer "acted within departmental policies and guidelines."

11.    "[I]f I was an ordinary citizen, especially a young black man, I would have ended up in handcuffs," Commissioner Cupid wrote. "[The police] would have felt their actions were justified … and I am sure evaluated me as being uncooperative and as disturbing the police."

## Silva Sees a Woman Texting while Driving with Children in the Car

12.    Born in Brazil, Silva came to the United States in 1995 for school. Between working and studying, he met his soon-to-be wife and settled in Cobb County. Then, about eight years ago, a driver who was texting while driving killed his brother.

13.    On April 12, 2015, Silva was driving home from work when he noticed a woman texting while driving with several children in her car. Reminded of his late brother, Silva looked at the woman and shook his head as he passed. Shortly after that, he noticed that the woman was following him. She followed him all the way to his home.

14.    The woman parked behind Silva, got out of her car, leaving the children inside, and screamed at him. Confused by the woman's behavior—after all, she was the one who had endangered the public and the

children in her car by texting while driving—Silva began recording the event with his cell phone.

15.    When the woman threated to call the police, Silva encouraged her to do so.

16.    Although Silva's cell-phone video shows the woman—calm and unrestrained—outside her car, she called the police, claiming that she was being harassed and detained against her will. But Silva never touched her, never blocked her from returning to her car, and never prevented her from driving away.

### "Ever Heard of Obstruction?"

17.    Officers Amanda Smith and Clinton Monahan were dispatched to the scene. When they arrived, their attention was on Silva, who was filming the incident. Silva began telling the officers what had happened, but they were not interested, demanding instead that he return to his van. Silva got back in his van and continued filming.

18.    While Silva was sitting in his van, Officer Monahan demanded his driver's license. Silva tried again to tell the officers what had happened. Officer Monahan was not interested, asking, "You ever heard of obstruction?"

19.    As the officers walked back to the woman, Silva got out of the van to keep recording. Officer Monahan then stormed back, demanding, "Put your phone down!" When Silva continued filming, Officer Monahan threw him to the pavement, wrenched his arms behind his back, hand-cuffed him, and put him in the back of a patrol car.

20.    By throwing Silva to the pavement and wrenching his hands behind his back, Officer Monahan used excessive and unreasonable force. Silva sustained significant injuries in his encounter with the County and Officer Monahan. Since then, he has had to undergo extensive medical treatment, including regular epidurals. So far, his medical expenses total over $28,000. But for Officer Monahan's conduct and the County's custom-ary violation of constitutional rights, Silva would have suffered no dam-ages. And the damages he did suffer—damages he continues to suffer—were a reasonably foreseeable consequence of Officer Monahan's conduct and the County's customs.

21.    Silva was arrested for false imprisonment, disorderly conduct, and reckless driving. But he had done none of that. At the same time, although the woman had violated a slew of laws—false statements, tex-ting while driving, and child endangerment, to name a few—no charges were brought against her.

## Officer Monahan Destroys Evidence

22.     After slamming Silva to the ground, Officer Monahan took his phone. The dashboard camera in another patrol car—Officer Monahan's was off—shows him searching through Silva's phone.

23.     Officer Monahan had no warrant to search Silva's phone. There were no exigent circumstances justifying the search.

24.     Officer Smith drove Silva to the County jail. On the way, Silva told her about the video. She looked through his phone for the video but found nothing: Officer Monahan had deleted it.

25.     Officer Smith confirmed Silva's story. "I corroborated some of [Silva's] statements because when I arrived on scene [his] vehicle was in front of [the woman's] vehicle," she reported. "I also confirmed the area where I arrived was just out front of [Silva's] residence."

26.     Officer Smith even concluded that the woman was the aggressor. "When I was evaluating all the testimonial and physical evidence," she wrote, "I concluded that [the woman] was the aggressor on the road."

27.     Perhaps realizing that Silva's arrest was illegal, the officers decided not to pursue the original charges, opting instead for obstruction. But under Georgia law, there is no basis for an obstruction charge here: "during the course of [an] improper detention, a citizen is free to ignore

requests and … to walk away," the Georgia Court of Appeals has held, and "no charge of obstruction [will] lie." *Strickland v. State*, 265 Ga. App. 533, 538 (2004). Officer Monahan and the County knew that.

28.    Never did Officer Monahan have even arguable probable cause to arrest Silva. And no reasonable officer would have done what Officer Monahan did; his actions were objectively unreasonable. In fact, his conduct shows malice, willfulness, and corruption.

### After Seeing the Video, the County Solicitor General Dismisses All Charges Against Silva

29.    After he was released from jail, Silva found out that the County, Officer Monahan, or both had had his van towed, even though it was parked just in front of his home. Getting it out of impound caused Silva significant trouble and expense, including a $135 fee.

30.    Silva eventually recovered the deleted video. And after he presented it to the County's Solicitor General, all charges were dropped. By then, Silva had spent time in jail for exercising his constitutional rights and had incurred over $10,000 in legal expenses.

## LEGAL LIABILITY

### Count I
### Violation of the First and Fourteenth Amendments
### Under 42 U.S.C. § 1983
### (The County and Officer Monahan)

31.     Silva incorporates paragraphs 1–20, 24, and 27–30 into this
Count.

32.     Silva has a "First Amendment right … to … videotape police
conduct." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)
(citations omitted). The County and Officer Monahan had fair warning of
this right, which was clearly established when they violated it.

33.     By preventing Silva from videotaping police conduct, taking
his cell phone, and deleting the video, Officer Monahan is liable under
§ 1983 because he intentionally committed acts, acting under color of law,
that violated Silva's First and Fourteenth Amendment rights.

34.     Silva's constitutionally protected conduct—filming the police
on public property—was a substantial or motivating factor for Officer Mo-
nahan and the County's action.

35.     In light of *Barnes v. Cobb County*, No. 1:14-cv-00948-TWT,
and the duties assigned to Officer Monahan, the need for more or different

- 10 -

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the County can reasonably be said to have been deliberately indifferent to the need. The County is liable under § 1983 because its inadequate training and supervision caused, or contributed to causing, Officer Monahan to intentionally commit acts, acting under color of law, that violated Silva's First and Fourteenth Amendment rights.

36.   The County is also liable under § 1983 because Officer Monahan's conduct is the product of the County's unlawful customs, policies, and practices. Those customs, policies, and practices are evident from, among other things, repeated incidents where the County's agents, acting under color of law, intentionally deprive citizens of constitutional rights.

37.   As a direct and proximate result of the County and Officer Monahan's unlawful actions, Silva has suffered and will continue to suffer damages.

### Count II
### Violation of the Fourth and Fourteenth Amendments
### Under 42 U.S.C. § 1983
### (The County and Officer Monahan)

38.   Silva incorporates paragraphs 1–30 into this Count.

39.     Silva has a Fourth Amendment right to be free of unreasonable searches and seizures. U.S. Const. IV ("The right of the people to be secure in their persons, … papers, and effects against unreasonable searches and seizures, shall not be violated"). And when it comes to cellphone searches, officers must get a warrant before searching the phone. *See, e.g.*, *Riley v. Cal.*, 134 S. Ct. 2473, 2485 (2014) ("[O]fficers must generally get a warrant before [searching a cell phone]."). The County and Officer Monahan had fair warning of those rights, which were clearly established when they violated them.

40.     By arresting Silva without even arguable probable cause, Officer Monahan is liable under § 1983 because he intentionally committed acts, acting under color of law, that violated Silva's Fourth and Fourteenth Amendment rights.

41.     A reasonable and prudent officer would not have used the degree of force that Officer Monahan used here. By using excessive and unreasonable force during the arrest, Officer Monahan is liable under § 1983 because he intentionally committed acts, acting under color of law, that violated Silva's Fourth and Fourteenth Amendment rights.

42.     By searching Silva's cell phone without a warrant and deleting the video, Officer Monahan is liable under § 1983 because he intentionally committed acts, acting under color of law, that violated Silva's Fourth and Fourteenth Amendment rights.

43.     As video cameras became common features on cell phones, reports of law enforcement deleting videos of their conduct proliferated. To prevent that misconduct, and in light of the duties assigned to Officer Monahan, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the County can reasonably be said to have been deliberately indifferent to the need. The County is liable under § 1983 because its inadequate training and supervision caused, or contributed to causing, Officer Monahan to intentionally commit acts, acting under color of law, that violated Silva's Fourth and Fourteenth Amendment rights.

44.     The County is also liable under § 1983 because Officer Monahan's conduct is the product of the County's unlawful customs, policies, and practices. Those customs, policies, and practices are evident from, among other things, repeated incidents where the County's agents, acting under color of law, intentionally deprive citizens of constitutional rights.

45. As a direct and proximate result of the County and Officer Monahan's unlawful actions, Silva has suffered and will continue to suffer damages.

### Count III
### False Imprisonment
### (Officer Monahan)

46. Silva incorporates paragraphs 1–7 and 12–30 into this Count.

47. Officer Monahan unlawfully detained Silva, depriving him of his personal liberty by, among other things, arresting him without probable cause.

48. As a direct and proximate result of Officer Monahan's unlawful actions, Silva has suffered and will continue to suffer damages.

### Count IV
### False Arrest
### (Officer Monahan)

49. Silva incorporates paragraphs 1–7 and 12–30 into this Count.

50. Officer Monahan arrested Silva under process of law and without probable cause. The arrest was made maliciously because, among other things, it was based on false claims that Officer Monahan knew were false.

51. As a direct and proximate result of Officer Monahan's unlawful actions, Silva has suffered and will continue to suffer damages.

### Count V
### Punitive Damages
### (Officer Monahan)

52.    Silva incorporates paragraphs 1–51 into this Count.

53.    Officer Monahan's actions show willful misconduct, fraud, wantonness, oppression, and that entire want of care that would raise the presumption of conscious indifference to the consequences. His actions also show malice or reckless indifference to Silva's federally protected rights.

54.    Silva is thus entitled to punitive damages, including under O.C.G.A. § 51-12-5.1.

### PRAYER FOR RELIEF

Silva respectfully prays for relief as follows:

(a)    That the Court award him compensatory damages on Counts I–IV;

(b)    That the Court award him punitive damages, including under O.C.G.A. § 51-12-5.1;

(c)    That the Court award him attorney's fees, litigation expenses, and costs, including under 42 U.S.C. §§ 1920 and 1988 and O.C.G.A. § 13-6-11; and

(d)     That the Court award him any other relief necessary to do

justice.

## JURY DEMAND

Silva demands a jury trial on all issues so triable.

Dated: August 30, 2016.          Respectfully submitted,

/s/ *Andre T. Tennille III*
Kenneth B. Hodges III
Georgia Bar No. 359155
Andre T. Tennille III
Georgia Bar No. 940510
KEN HODGES LAW
2719 Buford Highway, N.E.
Atlanta, Georgia 30324
(404) 692-0488
ken@kenhodgeslaw.com
dre@kenhodgeslaw.com

Gary W. Jones
Georgia Bar No. 400420
GARY W. JONES ATTORNEY AT LAW
145 Church Street
Marietta, Georgia 30060
(770) 423-1930
gwjones@yahoo.com

*Counsel for Plaintiff Sidnei Silva*